(No. 57267.— 

GRANITE CITY MOOSE LODGE NO. 272, Appellee, v. JOHN D. KRAMER, Secretary of Transportation *et al.* (John D. Kramer, Appellant).

*Opinion filed May 18, 1983.*

266

Tyrone C. Fahner and Neil F. Hartigan, Attorneys General, of Springfield (Roy E. Frazier, Assistant Attorney General, and R. Eric Robertson, Special Assistant Attorney General, of counsel), for appellant.

Dailey & Walker, of Granite City, for appellee.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, Granite City Moose Lodge No. 272, filed a petition for a writ of *mandamus* to compel John D. Kramer, Secretary of the Illinois Department of Transportation (State), and the city of Granite City, to institute eminent domain proceedings to compensate plaintiff for the alleged taking and damaging of its property. Pursuant to pretrial motions filed by the State and the city, the circuit court of Madison County dismissed the petition. A divided appellate court, in a Rule 23 order (87 Ill. 2d R. 23), affirmed the dismissal of plaintiff's petition against the city, but reversed the dismissal as to the State. (107 Ill. App. 3d 1173.) We granted the State leave to appeal.

The issue is whether, under the circumstances of this case, a writ of *mandamus* may properly lie to compel the State and city to institute eminent domain proceedings.

Plaintiff owns a parcel of real estate, improved with a building, which is located at the intersection of Nineteenth and Adams streets in the city. On September 24, 1979, the State and the city executed an agreement for the construction of an overpass along Nineteenth Street. The overpass extends approximately from the corner of Nineteenth and Benton streets on the east, to Rock Road on the west, and elevates the roadway over a number of railroad tracks. During the course of the construction a concrete wall was erected which extends, at one

point, beyond the height of plaintiff's building. According to the agreement, the purpose of the improvement was "to facilitate the free flow of traffic and insure safety to the motoring public."

Plaintiff's petition for a writ of *mandamus* alleges that, as a result of the construction, it has been deprived of all access to Nineteenth Street and that its access to Adams Street has been impaired. It is further alleged that the lateral support of plaintiff's building has been impaired; that, during construction, the entrance to the building was barricaded; that defendant trespassed upon the property; and that the property was improperly used as a storage area. Finally, plaintiff claimed that construction of the overpass substantially reduced the fair market value of its property.

Article I, section 15, of the 1970 Illinois Constitution provides that "[p]rivate property shall not be taken or damaged for public use without just compensation." (Ill. Const. 1970, art. I, sec. 15.) This constitutional guarantee is codified in "An Act to provide for the exercise of the right of eminent domain." (Ill. Rev. Stat. 1979, ch. 47, par. 1 *et seq.*) Plaintiff essentially contends that both the State and the city have taken or damaged its property within the meaning of these provisions, and may therefore be compelled to institute eminent domain proceedings. In particular, it is argued that the deprivation of access to a public street is a property right, the damaging of which requires payment of just compensation.

The State contends that it cannot be required to institute eminent domain proceedings because the city, rather than the State, actually benefited from, and was authorized to construct, the overpass. It is further argued that, even if the State was authorized to participate "in a taking or damaging of plaintiff's property," a writ of *mandamus* should not issue because plaintiff has an adequate remedy at law, against the city, for damages.

We need not determine whether plaintiff's ability to obtain damages from the city bars recovery against the State, because we find that the State did not sufficiently participate in the alleged taking of the property. The agreement between the State and the city, by which plaintiff seeks to hold the State liable, was entered into for the benefit of the city. The right-of-way necessary for construction of the project was acquired in the city's name, and it had the primary responsibility concerning the details of construction. Further, it is the city's responsibility to maintain "the entire improvement," and regulate its use.

Although plaintiff alleges that Nineteenth Street eventually connects with a State highway, this fact does not indicate that the purpose of the improvement was to benefit the State. (Nor was this fact alleged in plaintiff's petition for a writ of *mandamus*.) Our review of the agreement indicates that the State was involved in the project to the extent that it acted as a "contracting agent" in securing construction bids, provided general supervision of the construction and necessary "guidance," and aided the city in funding the project. Significantly, with the exception of an amount received in Federal-Aid Urban Funds, the city is required to reimburse the State "for all costs of the improvement."

We note parenthetically that, even if the State were to be held responsible for the alleged condemnation, it is certainly questionable whether a writ of *mandamus* would be the appropriate remedy. Plaintiff cites two cases for the proposition that it may properly file a *mandamus* action, rather than pursue a common law action for damages. (*Department of Public Works & Buildings v. Wilson & Co.* (1975), 62 Ill. 2d 131; *People ex rel. Haynes v. Rosenstone* (1959), 16 Ill. 2d 513.) In *Wilson & Co.*, the State instituted eminent domain proceedings. The property owner did not attempt to obtain a writ of

*mandamus,* and the propriety of this remedy was not at issue.

In *Rosenstone,* this court determined that a property owner could seek a writ of *mandamus* compelling the State to institute eminent domain proceedings. However, at the time that case was decided, there was no other remedy against the State for the taking or damaging of private property. The State could not be responsible in an action for damages because of sovereign immunity. Because of immunity, the legislature has provided that the State may be sued for damages in the Court of Claims. See Ill. Rev. Stat. 1979, ch. 127, par. 801; Ill. Rev. Stat. 1979, ch. 37, par. 439.1.

Further, in *Rosenstone,* there was no other party involved against whom the property owner could seek a remedy. The significance of this fact is evident from this court's opinion in *People ex rel. Pratt v. Rosenfield* (1948), 399 Ill. 247. There, as in the instant case, the appellants, property owners, sought a writ of *mandamus* against both a city and the State. In denying the writ as to the State, this court reasoned:

> "Appellants seek the writ of *mandamus* against all of the appellees, saying that there is no other form of proceeding in which they may have relief against the three. Much reliance is placed by them upon the cases of *People ex rel. First Nat. Bank v. Kingery,* 369 Ill. 289, and *People ex rel. Omeara v. Smith,* 374 Ill. 286. The writ was allowed in those cases because a suit for damages could not be maintained against the Director of the Department of Public Works and Buildings and there was no other party against whom damages could be recovered. In the case at bar appellants allege liability against each appellee and say that each of the appellees has money available for the purpose of paying the consequential damages. The reason, therefore, existing in the *Kingery* and the *Smith cases* does not apply here." 399 Ill. 247, 250.

Our holding that the State may not be compelled to institute eminent domain proceedings does not foreclose

plaintiff from obtaining any relief. Recovery may properly be sought against the city, for whose benefit the improvement was constructed. Plaintiff contends that a writ of *mandamus* against the city is the appropriate remedy. The appellate court, however, determined that plaintiff must pursue a common law action for damages. (The city has not appealed this ruling.) We agree with the appellate court.

There is no question that a property owner suffers compensable damages if his access to an abutting street is taken or materially impaired. (*E.g., Department of Public Works & Buildings v. Wilson & Co.* (1975), 62 Ill. 2d 131; *Barnard v. City of Chicago* (1915), 270 Ill. 27.) However, a loss or impairment of access does not involve an actual physical invasion of the property, and it therefore constitutes a "damaging," rather than a "taking," of the property. (See *Department of Transportation v. Shaw* (1977), 68 Ill. 2d 342; *Barnard v. City of Chicago* (1915), 270 Ill. 27; *Rigney v. City of Chicago* (1881), 102 Ill. 64; *Department of Transportation v. Rasmussen* (1982), 108 Ill. App. 3d 615.) "We have repeatedly held that an abutting property owner is not entitled to have condemnation proceedings instituted to determine damages to his property occasioned by a public improvement where no part of his property is physically taken and that the city or other authorized sovereign constructing such improvement is not required, under the constitution or the Eminent Domain Act or any other law or statute, to institute condemnation or other proceedings to ascertain such damages." *Horn v. City of Chicago* (1949), 403 Ill. 549, 556, citing *People ex rel. Pratt v. Rosenfield* (1948), 399 Ill. 247; *People ex rel. Tyson v. Kelly* (1942), 379 Ill. 297; *County of Mercer v. Wolff* (1908), 237 Ill. 74. See also *Kane v. City of Chicago* (1945), 392 Ill. 172; *Department of Transportation v. McGovern* (1982), 103 Ill. App. 3d 461; *No. 3 Oakland Suburban Heights, Inc. v. Bekermeier* (1968), 94 Ill. App.

2d 67.

We have been referred to only one case which implied that a writ of *mandamus* may issue requiring a municipality to institute eminent domain proceedings. (*Grunewald v. City of Chicago* (1939), 371 Ill. 528.) *Grunewald* involved a common law action for damages; any reference therein to a *mandamus* action as an available remedy against the municipality was purely *dicta*. As this court subsequently stated, "the language [in *Grunewald*] was unnecessary to the decision of that case, was therefore *obiter dictum* and, furthermore, as applied to municipalities, was wrong." *People ex rel. Tyson v. Kelly* (1942), 379 Ill. 297, 302.

As previously related, plaintiff also argues that it is entitled to recovery for the damage to the lateral support of the building, and for various improper uses of its property during the period of construction. These allegations clearly refer to temporary and consequential damages, not a taking, and are recoverable in an action at law. (See, *e.g., Chicago National Bank v. City of Chicago Heights* (1958), 14 Ill. 2d 135; *Kane v. City of Chicago* (1945), 392 Ill. 172; *Chicago Flour Co. v. City of Chicago* (1909), 243 Ill. 268.) As plaintiff therefore has an available remedy at common law for damages against the city, we hold that issuance of a writ of *mandamus* is neither necessary nor proper.

Accordingly, for the reasons stated, the judgment of the appellate court holding that a writ of *mandamus* may issue against the State is reversed; the judgment upholding the dismissal of plaintiff's petition against the city is affirmed; and the judgment of the circuit court of Madison County is affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*