THE DEPARTMENT OF TRANSPORTATION *ex rel.* THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee and Cross-Appellant, v. GORDEN G. GASS *et al.*, Respondents-Appellants and Cross-Appellees.

Fifth District   No. 5—87—0147

Opinion filed February 1, 1988.

Sterling & Stanley, P.C., of Fairview Heights, for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones

Stewart, Solicitor General, of Chicago, Roy E. Frazier, Jr., Assistant Attorney General, of Springfield, and Paul D. Giamanco, Special Assistant Attorney General, of Mt. Vernon, of counsel), for appellee.

JUSTICE KARNS delivered the opinion of the court:

Gorden G. Gass and Mary Jane Gass (the Gasses) appeal from a judgment of the circuit court of Madison County awarding them $205,174.90 as just compensation in an eminent domain proceeding for the taking and damaging of their property by the Department of Transportation of the State of Illinois (the Department). The Department cross-appeals from the circuit court's supplemental judgment order assessing interest on the verdict at the rate of 12¾% per annum. We affirm both appeals.

In October of 1983, the Department filed a petition for condemnation seeking fee simple title to 32.978 acres owned by the Gasses for the construction of Interstate 255. The Gasses' property is generally located north of Illinois Route 162, east of Illinois Route 111 and south of Interstate 270 in Madison County. Prior to the taking, the Gasses owned a total of 1,058 acres in the area. Their farm originally was divided into two sections separated by an abandoned railroad right-of-way running east and west that had been converted into a nature trail. With the construction of Interstate 255, which runs generally north and south, and the taking of a portion of their land, their farm is now divided into four tracts. The northeast field is composed of 51.334 acres, the southeast field of 4.621 acres, the southwest field of 23.189 acres, and the northwest field of the remaining 945.98 acres. Access to the properties remaining on the east side of Interstate 255 is now limited to an undedicated road constructed along the west side of Interstate 255 going south, then under the overpass for Interstate 255 constructed over Illinois Route 162 and then back north along the westernmost side of Interstate 255. This road is elevated 18 feet higher than what the ground was prior to the improvement and is only 15 feet wide. Mr. Gass testified that some of his farm equipment is 21 feet 6 inches wide.

In addition to the farmland the Gasses own, they also lease approximately 1,000 acres, most of which adjoins their property on the east. Because of this fact, the Gasses filed a cross-petition for damages to their leasehold interests as a result of the taking. The trial court upon motion dismissed this aspect of their petition, finding it improper to consider such damages in the instant proceeding.

Witnesses for the Gasses testified the value of the property taken ranged from $98,934 to $108,800, with damages to the remainder

ranging from $115,308 to $327,175. The Department's witness testified the value of the property taken was $98,900 with damage to the remainder in the amount of $15,000. The jury returned a verdict of $103,000 for the property taken and $102,174.90 as damage to the remainder. The circuit court entered judgment upon the verdict for the sum of $76,272.90 plus interest as additional compensation over the preliminary just compensation awarded in an earlier "quick take" proceeding. In a supplemental judgment order, the court imposed over objection a 12¾% interest rate per annum on the additional sum due for the taking of the Gasses' land.

■ Before addressing the issues raised by both parties, we first must answer a motion to dismiss the Gasses' appeal taken with the case. The Department believes the Gasses have forfeited their right to appeal by "accepting the fruits of the award" (see *County of Cook v. Malysa* (1968), 39 Ill. 2d 376, 380-81, 235 N.E.2d 598, 601; *Department of Public Works & Buildings v. Forbeck* (1969), 118 Ill. App. 2d 231, 235, 254 N.E.2d 182, 184), or in this instance, by withdrawing the preliminary just compensation awarded in the quick take proceeding. The Department's contention, which incidentally the Department did not even address at oral argument, has absolutely no merit. First, the Department has misinterpreted the two cases cited above. Neither involved the withdrawal of quick take awards but rather involved only the withdrawal of final verdict amounts prior to appealing the judgments. The Gasses have not withdrawn the additional compensation awarded to them. They have not accepted yet the fruits of the award from which they are appealing. More importantly, however, to so penalize the Gasses would not only fly in the face of the statutory provisions (see Ill. Rev. Stat. 1985, ch. 110, pars. 7—106, 7—107, 7—109) and destroy the entire quick take procedure, but also would leave landowners without just compensation for the immediate taking of their property for many years. We refuse to accept the Department's strained position.

■■ ■ The Gasses argue in their first point on appeal that the trial court erred in dismissing that portion of their cross-petition pertaining to damages in connection with their leasehold interests. They believe that because some of the leased farmland is contiguous to their fee holdings (the remaining leased land being contiguous to this leased land) and because their access to these lands has been impaired with the construction of Interstate 255 so that farming all of the property as a single unit is no longer feasible, their leasehold interests and their land not taken have been additionally damaged. The Gasses argue severance damages should be determined in the instant pro-

ceeding, viewing the farm as one unit instead of on a case-by-case basis for each leased parcel taken or damaged. According to the Gasses, the "sum of the parts may not equal the whole."

It is true that in order to recover damages in an eminent domain proceeding for property not taken, the land not taken and the condemned land must be contiguous or so inseparably connected in use that the taking of one will necessarily injure the other. (See *City of Chicago v. Equitable Life Assurance Society of the United States* (1956), 8 Ill. 2d 341, 346, 134 N.E.2d 296, 299.) Here the lands are contiguous in part. But, contiguity alone is not sufficient. Another necessary element is unity of title. (See *State of Illinois Medical Center Comm'n v. United Church of the Medical Center* (1986), 142 Ill. App. 3d 498, 505, 491 N.E.2d 1327, 1332, *cert. denied* (1987), 480 U.S. 922, 94 L. Ed. 2d 698, 107 S. Ct. 1385; *City of Lake Forest v. First National Bank* (1977), 52 Ill. App. 3d 893, 896-97, 368 N.E.2d 156, 158-59.) This the Gasses cannot establish. The Gasses do have an interest in these lands, but it is not sufficient to permit them to qualify for severance damages in an eminent domain proceeding. (*Cf. Medical Center Comm'n*, 142 Ill. App. 3d at 506, 491 N.E.2d at 1333.) The Gasses are not without remedy, however. As lessees, they are entitled to share in the condemnation awards of their landlords for any injury suffered to their leasehold interests. (See *City of Lake Forest*, 52 Ill. App. 3d at 895, 368 N.E.2d at 157.) And, for that leased land which has not been condemned, just as an abutting property owner can bring an action to recover damages for injury to his property when his land has not been taken (see *Rothschild v. Baise* (1987), 157 Ill. App. 3d 481, 483, 486, 510 N.E.2d 418, 420, 422; *Department of Conservation v. Franzen* (1976), 43 Ill. App. 3d 374, 378, 356 N.E.2d 1245, 1248), so too can the Gasses bring an action at law for damages to their interests. Additionally, we do not see how in this instance a damaged interest in leased land, even though the desirability and profitability of using such lands may have dropped significantly, decreases the value of the property owned.

■ The Gasses next argue the trial court erred in permitting testimony concerning the proposed construction of a drainage ditch when the plans for the ditch did not exist as of the date the petition for condemnation had been filed and had not been finally approved prior to trial. We find no abuse of the trial court's discretion in this instance.

The Gasses maintained throughout the trial that the construction of Interstate 255 caused serious drainage problems for their farm. One of the proposed methods of solving the problem was the construc-

tion of a ditch on the south and east sides of the Gasses' farm. Because the plans had not been approved prior to trial and there was no guarantee that the Department would construct such a ditch, the Gasses believed any reference to the proposed ditch constituted error. The trial court agreed that if the construction of the ditch was purely conjectural, then such evidence would be inadmissible. If the Department could establish that it was a certainty, then such evidence was admissible as "an effort by the State to remedy the problem in connection with the damage element." The Department presented evidence, in conjunction with the plans, that it had acquired already permanent easements across those lands necessary for the ditch's construction. The court determined the parties could argue to the jury the likelihood of the ditch's construction and the extent of any damage to the Gasses' property from drainage problems created by the interstate. The witnesses were extensively cross-examined on these matters, and both parties argued their respective points to the jury. We find no error in the trial court's handling of the matter. (Compare *People ex rel. Department of Transportation v. Birger* (1987), 155 Ill. App. 3d 130, 137, 507 N.E.2d 1321, 1326, with *Department of Conservation v. First National Bank* (1976), 36 Ill. App. 3d 495, 499, 344 N.E.2d 11, 15.) We also note that any crop damage which occurred or may occur before the construction of the ditch would be subject to separate claims.

■ The Gasses also contend the trial court erred in ruling whether access to a portion of their farm had been eliminated was a question of fact for the jury. Prior to the construction of Interstate 255, the Gasses had complete access across their entire farm. With the construction of the interstate, access to the northeast field and the southeast field is limited to the 16-foot-wide frontage road. The Gasses argue these two fields have become landlocked by virtue of the narrow access road, which cannot accommodate some of their farm equipment. The Gasses also argue there is no guarantee that the road will remain open. The jury was instructed by the court that the Gasses could use the frontage road to travel to these fields. Whether access had been effectively eliminated or otherwise damaged, for instance by virtue of the road's elevation or size, was indeed a question of fact for the jury to determine. (See *Department of Public Works & Buildings v. Sun Oil Co.* (1978), 66 Ill. App. 3d 64, 71, 383 N.E.2d 634, 639.) Moreover, as the court noted, if the road were to be closed or access limited further in the future, any damage suffered by the Gasses at that time would be the subject of new proceedings. The trial court made no error in its rulings pertaining to access.

■ For their fourth point on appeal, the Gasses claim the trial court erred in not striking the testimony of the Department's valuation witness. They believe he used improper elements, namely circuity of travel and separate values for the land and building, as a basis for determining the value of the land taken. Because these elements were taken into consideration, the Gasses argue his testimony was incompetent and should have been stricken. (See *City of Chicago v. Giedraitis* (1958), 14 Ill. 2d 45, 51, 150 N.E.2d 577, 580; *Department of Public Works & Buildings v. Greenwell* (1977), 45 Ill. App. 3d 159, 163-64, 359 N.E.2d 780, 783-84.) The Gasses are mistaken in their understanding of the expert's testimony. This witness did not arrive at his valuation of the fair cash market value of the property by adding the sum of the buildings and the value of the land. Rather, he added to the value of the land a contributory value of the improvements. As he himself stated, his evaluation was based on the property as a whole. (See *Lake County Forest Preserve District v. O'Malley* (1981), 96 Ill. App. 3d 1084, 1091, 421 N.E.2d 980, 986.) Moreover, while the witness admitted he considered circuity of travel in arriving at his opinion of value, he did not place any separate monetary value on this item. We find no abuse of the trial court's discretion necessitating reversal in granting the witness an opportunity to clarify his testimony or in allowing his testimony to stand. See *Birger*, 155 Ill. App. 3d at 134, 507 N.E.2d at 1324.

■ The Gasses' final contention on appeal is that they should have been granted a new trial because of the Department's reference to "taxpayers" in its closing argument. The complained-of reference occurred when counsel for the Department stated "the suit was filed in this case on behalf of the People of the State of Illinois, and what that means is the suit is filed here on behalf of the taxpayers." The Gasses objected immediately. Counsel for the Department, in response to the trial court's ruling, stated that the point he was making was that "it doesn't come out of a rosary fund." While we agree that such statements were highly improper (see *Sun Oil Co.*, 66 Ill. App. 3d at 68, 383 N.E.2d at 637-38), they do not warrant the granting of a new trial in this instance. The reference was brief and resulted in little prejudice, if any, to the Gasses, as evidenced by the jury's verdict. The jury's award was much closer to the range of figures presented by the Gasses' witnesses than those of the Department's valuation witness. Because the jury viewed the property, and because the verdict was well within the range of competent evidence, we will not overturn the decision. See, *e.g.*, *O'Malley*, 96 Ill. App. 3d at 1092, 421 N.E.2d at 987.

■■ The Department argues in its cross-appeal that the trial court erred in awarding interest on the jury verdict at the rate of 12¾% per annum in its supplemental judgment order. The Department believes it is the function of the jury to determine what rate of interest should be awarded because interest is part of "just compensation." Both parties also ask us to determine what is "just compensation" over and above the statutory interest rate by indicating the procedure to be followed and the factors to be considered. We decline to so accommodate the parties. We do not feel an extended treatise on the issue is warranted here. Suffice it to say, we believe *Department of Transportation v. Rasmussen* (1982), 108 Ill. App. 3d 615, 439 N.E.2d 48, provides sufficient guidance on the matter. To the extent there is an ambiguity as to who is to determine what the rate of interest shall be (compare 108 Ill. App. 3d at 628, 439 N.E.2d at 58 (determination of whether a given rate of interest is sufficient for just compensation is a judicial function) with 108 Ill. App. 3d at 629, 439 N.E.2d at 59 (the proper rate of interest is a question for the trier of fact)), we hold that it is a supplemental question of law for the trial court to determine. We therefore find no error in the trial court's award.

For the foregoing reasons, we affirm both the judgment and the supplemental judgment order of the circuit court of Madison County.

Affirmed.

HARRISON, P.J., and LEWIS, J., concur.